UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DERALD PEAY AND DEBRA PEAY,

        Plaintiffs,

   v.

MIDLAND MORTGAGE COMPANY;
MORTGAGE PROCESS CENTER;
QUALITY LOAN SERVICE CORP.;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
U.S. BANK NATIONAL
ASSOCIATION; RON ALLEN AND
ASSOCIATES; RONNIE D. ALLEN;
MARISSA BACO, and DOES 1-20
inclusive,

        Defendants.

_____/

NO. CIV. 09-2228 WBS KJM

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS

----oo0oo----

      Plaintiffs Derald Peay and Debra Peay ("the Peays")

filed this action against Midland Mortgage Company ("Midland"),

Mortgage Process Center ("Mortgage Process"), Quality Loan

Service Corp. ("Quality Loan"), Mortgage Electronic Registration

Systems, Inc. ("MERS"), U.S. Bank National Association ("U.S.

1

Bank"), T.D. Service Company ("T.D."), AHMSI Default Services,
Inc. ("AHMSI"), Ron Allen and Associates, Ronnie D. Allen, and
Marissa Baco alleging various state and federal claims relating
to loans they obtained to refinance their home in Grass Valley,
California.  In their First Amended Complaint ("FAC"), plaintiffs
assert ten causes of action against ten defendants.[1]

MERS, Midland, and U.S. Bank move to dismiss
plaintiff's FAC pursuant to Federal Rule of Civil Procedure
12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for
failure to state a claim upon which relief can be granted.  MERS,
Midland, and U.S. Bank's Motion to Dismiss challenges only the
causes of action that apply to them. (Mot. to Dismiss at 2.)

On a motion to dismiss, the court must accept the
allegations in the complaint as true and draw all reasonable
inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
U.S. 232, 236 (1974), overruled on other grounds by Davis v.
Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
(1972).  To survive a motion to dismiss, a plaintiff needs to
plead "only enough facts to state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.
1955, 1974 (2007).  This "plausibility standard," however, "asks
for more than a sheer possibility that a defendant has acted
unlawfully," and where a complaint pleads facts that are "merely
consistent with" a defendant's liability, it "stops short of the
line between possibility and plausibility." Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at

---

[1]Plaintiffs have since dismissed defendants T.D. and AHMSI.

1  556-57).

2      A.    <u>Tender</u>

3          Defendants first argue that plaintiffs' FAC should be

4  dismissed in its entirety because plaintiffs have failed to

5  allege tender, and therefore have failed to allege an injury

6  traceable to defendants' actions necessary for constitutional

7  standing requirements.  The tender rule applies where a plaintiff

8  seeks to set aside a foreclosure or is suing for damages

9  resulting from a wrongful foreclosure, and requires that

10  potential plaintiffs show they are able to pay the full amount

11  necessary to cure the default.  "It is settled that an action to

12  set aside a trustee's sale for irregularities in sale notice or

13  procedure should be accompanied by an offer to pay the full

14  amount of the debt for which the property was security." <u>Arnolds</u>

15  <u>Mgmt. Corp. v. Eishen</u>, 158 Cal. App. 3d 575, 578 (1984).

16          However, courts have discretion as to whether to

17  require tender, and several courts have found that failure to

18  allege tender is not fatal to plaintiff's complaint at the

19  motion-to-dismiss stage.  <u>See, e.g.</u>, <u>Alcaraz v. Wachovia Mortg.,</u>

20  <u>FSB</u>, No. CV 08-1640, 2009 WL 160308, at *4 (E.D. Cal. Jan. 21,

21  2009) (O'Neill, J.) (refusing to grant a motion to dismiss

22  plaintiff's rescission claims under TILA even though the

23  complaint failed to allege the ability to tender because the

24  court was troubled by the assertion of a factual issue to defeat

25  plaintiff's rescission claim); <u>see also</u> <u>ING Bank v. Ahn</u>, No.

26  09-995, 2009 WL 2083965, at *1-2 (N.D. Cal. July 13, 2009)

27  (explaining that case law does not require courts to grant a

28  motion to dismiss where plaintiff fails to allege tender).

3

1    Plaintiffs in this case allege much more than just a

2 simple defect in the foreclosure process; they allege that the

3 defendants in this action engaged in a massive conspiracy to

4 defraud plaintiffs allegedly spanning over three years.  Contrary

5 to defendants' assertions, plaintiffs do not have to allege

6 tender when the injury they allege is unrelated to the

7 foreclosure process.  The only possible cause of action to which

8 the tender rule could apply is plaintiff's tenth cause of action

9 for wrongful foreclosure, which alleges in part that defendants

10 failed to give proper notice of the Notice of Default under

11 California Civil Code § 2923.5.  (FAC ¶ 138.)  This court will

12 not, however, exercise its discretion and require plaintiffs to

13 allege tender at such an early phase in these proceedings.

14    B.   <u>Rosenthal Fair Debt Collection Practices Act</u>

15    Plaintiff's second cause of action alleges that MERS,

16 Midland, U.S. Bank, and other defendants violated the Rosenthal

17 Fair Debt Collection Practices Act ("RFDCPA" or "Rosenthal Act"),

18 Cal. Civ. Code §§ 1788 <u>et seq.</u> (West 2009) (FAC 14.)  The RFDCPA

19 prohibits a host of unfair and oppressive methods of collecting

20 debt, but to be liable under the RFDCPA a defendant must fall

21 under its definition of "debt collector."  <u>Izenberg v. ETS Svcs.,</u>

22 <u>LLC</u>, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008).  A "debt

23 collector" under the RFDCPA is "any person who, in the ordinary

24 course of business, regularly, on behalf of himself or herself or

25 others, engages in debt collection."  <u>Cal. Civ. Code</u> § 1788.2(c)

26 (2008).

27    Plaintiffs do not identify in their FAC the sections of

28 the RFDCPA that MERS, Midland, and U.S. Bank have allegedly

4

violated, and fail to allege facts that would support the inference that these defendants are "debt collectors" under the RFDCPA.  Instead, their FAC contains only a conclusory restatement of the definition of "debt collector" under the RFDCPA, (FAC ¶ 71.), and fails to allege other essential elements of the statute necessary to establish liability as a "debt collector," namely that the deed of trust memorializes a "consumer credit transaction" and that the amount owed under the deed of trust is a "consumer debt" according to the RFDCPA.  See Cal. Civ. Code § 1788.2(b)-(f) (West 2009).

Furthermore, the FAC lumps together MERS, Midland, U.S. Bank, Mortgage Process, and AHMSI as "defendants" who threatened to (1) collect on a debt not owed to them, (2) make false reports to credit reporting agencies, (3) foreclose upon a void security interest, (4) foreclose upon a note that they did not possess and were not entitled to payment, (5) falsely state the amount of a debt, (6) increase the amount of a debt by including amounts not permitted by law or contract, and (7) use unfair and unconscionable means to collect a debt.  (FAC ¶ 72.)  It is unclear what actions are attributable to which defendants, and this pleading is insufficient to survive a motion to dismiss.

Additionally, foreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA.  See Izenberg, 589 F. Supp. 2d at 1199; see also Rosal v. First Federal Bank of California, No. 09-1276, 2009 WL 2136777 (N.D. Cal. July 15, 2009) (dismissing RFDCPA claim as to all defendants in foreclosure case); Ricon v. Recontrust Co., No. 09-937, 2009 WL 2407396, at *4 (S.D. Cal. Aug. 4, 2009) (dismissing with

5

prejudice plaintiff's unfair debt collection claims in
foreclosure case); <u>Pittman v. Barclays Capital Real Estate, Inc.</u>,
No. 09-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009)
(dismissing with prejudice plaintiff's Rosenthal Act claim in
foreclosure case); <u>Gallegos v. Recontrust Co.</u>, No. 08-2245, 2009
WL 215406, at *3 (S.D. Cal. Jan. 28, 2009) (dismissing RFDCPA
claim in foreclosure case).

           In their Opposition, plaintiffs allege that Midland is
a debt collector because it issued mortgage account statements
and collected payments on plaintiffs' mortgage from plaintiffs.
(Opp. Mot. to Dismiss 14.)  As previously stated, plaintiffs'
Exhibit 3 is not properly subject to judicial notice.
Furthermore, this allegation still does not explain how Midland
qualifies as a "debt collector" under the RFDCPA.  To the extent
that plaintiffs assert that U.S. Bank's liability as trustee is
tied to Midland's, plaintiff's allegations against U.S. Bank
likewise fail.  Plaintiffs assert that MERS is a debt collector
by virtue of attempting to collect a debt "in concert" with
Midland, U.S. Bank, and Quality Loan, (Opp. Mot. to Dismiss
15:6-8), and that their illegal acts included directing Quality
Loan to commit fraud by filing the Notice of Default and by
putting "the whole fraudulent scheme in motion." (Opp. Mot. to
Dismiss 15:11.)  Plaintiffs fail to explain MERS's involvement in
the alleged debt collection by Midland and U.S. Bank, or how any
of its other alleged activities likewise fall under the Act's
protections.  Furthermore, foreclosure pursuant to a deed of
trust is activity outside the scope of the RFDCPA.  If MERS did
direct Quality Loan to file the Notice of Default as alleged,

1  this conduct would not be subject to the provisions of the

2  RFDCPA.  Plaintiffs have therefore failed to plead facts

3  sufficient under Federal Rule of Civil Procedure 8(a)(2) to

4  survive a motion to dismiss.  MERS, Midland, and U.S. Bank's

5  Motion to Dismiss plaintiffs' cause of action for RFDCPA

6  violations is granted with leave to amend.

7       C.   <u>Negligence</u>

8            To prove a cause of action for negligence, plaintiffs

9  must show "(1) a legal duty to use reasonable care; (2) breach of

10 that duty, and (3) proximate [or legal] cause between the breach

11 and (4) the plaintiff[s'] injur[ies]." <u>Mendoza v. City of Los</u>

12 <u>Angeles</u>, 66 Cal. App. 4th 1333, 1339 (Ct. App. 1998) (citation

13 omitted).  "The existence of a legal duty to use reasonable care

14 in a particular factual situation is a question of law for the

15 court to decide." <u>Vasquez v. Residential Invs., Inc.</u>, 118 Cal.

16 App. 4th 269, 278 (2004).  Plaintiffs contend that "[d]efendants

17 breached their duty of care to the [p]laintiffs when they failed

18 to maintain the original Mortgage Note, failed to properly create

19 original documents, failed to make the required disclosures to

20 the [p]laintiffs and instituted foreclosure proceedings

21 wrongfully."  (FAC ¶ 79.)  Plaintiffs further allege that

22 defendants "breached their duty of care to the [p]laintiffs when

23 they took payments to which they were not entitled, charged fees

24 they were not entitled to charge, and made or otherwise

25 authorized negative reporting of [p]laintiffs creditworthiness to

26 various credit bureaus wrongfully."  (FAC ¶ 80.)

27           Plaintiffs cite no authority for the proposition that

28 MERS, U.S. Bank, or Midland owed plaintiffs a duty to maintain

and create original documents, other than the statement that "[a] general duty not to harm another is owed to everyone." (Opp. Mot. to Dismiss 16:9.) This vague principle is undercut, however, by the specific rule that loan servicers do not owe a duty to the borrowers of the loans they service. See Watts v. Decision One Mortg. Co., No. 09-43 2009 U.S. Dist. LEXIS 59694 (S.D. Cal. July 13, 2009); Marks v. Ocwen Loan Servicing, No. 07-2133, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10, 2009) ("[A] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract.") Plaintiffs allege repeatedly that Midland is their loan servicer, (FAC ¶¶ 87-88; Opp. Mot. to Dismiss 17:2-3, 17:17-18:5), but also assert the alternative theory that Midland is a "third-party stranger[]" to their deed of trust. (Opp. Mot. to Dismiss 17:8-9.) The Notice of Default and Election To Sell Under Deed of Trust (Def. RJN Ex. D.) and Trustee's Deed upon Sale (Def. RJN Ex. F.), however, name Midland as the party the plaintiffs should contact to arrange for payment to stop the foreclosure and the party to which the Deed should be mailed when recorded, respectively. Regardless of how Midland became involved in this mortgage loan, because it was servicing plaintiffs' loan it owes no duty to plaintiffs and a claim for negligence therefore fails.

Plaintiffs assert that MERS owed a duty to not cause plaintiffs harm in its administrative capacity of recording, maintaining and transferring documents related to their loan. They cite no authority, however, for this proposition. Absent such authority, a pleading of an assumption of duty by MERS, or a special relationship, plaintiff cannot establish MERS owed a duty

1   of care.  <u>See</u> <u>Hardy v. Indymac Federal Bank</u>, No. 09-935, 2009 WL

2   2985446, at *7 (E.D. Cal. Sept. 15, 2009); <u>Bentham v. Aurora Loan</u>

3   <u>Servs.</u>, No. 09-2059, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1,

4   2009).  As the listed nominee and beneficiary under the Deed of

5   Trust, MERS had authority to assign its beneficial interest to

6   another party.  <u>See</u> Cal. Civ. Code § 1934 ("Any assignment of a

7   mortgage and any assignment of the beneficial interest under a

8   deed of trust may be recorded, and from the time the same is

9   filed for record operates as constructive notice of the contents

10  thereof to all persons."); <u>Bentham</u>, 2009 WL 2880232 at *3.

11  Additionally, plaintiffs fail to plead any facts whatsoever with

12  respect to U.S. Bank.

13        Furthermore, the FAC does not indicate which of the

14  alleged actions apply to MERS, U.S. Bank, or Midland.  Should

15  plaintiffs decide to amend their complaint, further factual

16  allegations will be needed.  Defendants should not be forced to

17  guess how their conduct was allegedly negligent.  <u>See</u> <u>Associated</u>

18  <u>Gen. Contractors of Cal., Inc. v. Cal. State Council of</u>

19  <u>Carpenters</u>, 459 U.S. 519, 526 (1983); <u>Gauvin v. Trombators</u>, 682

20  F. Supp. 1067, 1071 (N.D. Cal. 1988).  While plaintiffs allege

21  more details in their Opposition to the motion to dismiss, the

22  court cannot consider material outside of the complaint on a Rule

23  12(b)(6) motion to dismiss.  <u>Anderson v. Angelone</u>, 86 F.3d 932,

24  935 (9th Cir. 1996).

25        The Court therefore dismisses plaintiff's third cause

26  of action as to Midland, U.S. Bank, and MERS with leave to amend.

27  D.   <u>Real Estate Settlement Procedures Act</u>

28        The Real Estate Settlement Procedures Act of 1974

9

("RESPA") provides that borrowers must be provided certain
disclosures relating to the mortgage loan settlement process.
See 12 U.S.C. § 2601 (2006).  Section 2605 relates to the
disclosures and communications required regarding the servicing
of mortgage loans, and provides that loan servicers have a duty
to respond to qualified written requests ("QWRs") from borrowers
asking for information relating to the servicing of their loan.
See 12 U.S.C. § 2605(e).  Loan servicers have 60 days after the
receipt of a QWR to respond to the borrower inquiry.  12 U.S.C. §
2605(e)(2).  Plaintiffs allege that they mailed a QWR to Midland
on June 19, 2009 which included a demand to rescind the loan
under TILA, and that Midland has not responded to the request as
required by the statute.  (FAC ¶ 35.)  These allegations are
sufficient to put Midland on notice and allege that Midland
violated its obligations under RESPA.  More than four months have
passed since plaintiffs mailed their QWR to Midland.  This, in
itself, violates RESPA.  See 12 U.S.C. § 2605(e)(2).

Plaintiffs must, however, allege actual harm to survive
a motion to dismiss.  Section 2605(f) imposes liability on
servicers that violate RESPA and fail to make the required
disclosures.  12 U.S.C. § 2605(f).  Although this section does
not explicitly make a showing of damages part of the pleading
standard, "a number of courts have read the statute as requiring
a showing of pecuniary damages in order to state a claim."  Allen
v. United Financial Mortg. Corp., 2009 WL 2984170, at *5 (N.D.
Cal. Sept. 15, 2009).  For example, in Hutchinson v. Del. Sav.
Bank FSB, the court stated that "alleging a breach of RESPA
duties alone does not state a claim under RESPA.  Plaintiff must,

at a minimum, also allege that the breach resulted in actual damages." 410 F. Supp. 2d 374, 383 (D.N.J. 2006). This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure to respond or give notice has caused them actual harm. See Singh v. Wash. Mut. Bank, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16, 2009 WL 2588885 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees") (quotation marks and citation omitted).

The courts nevertheless "have interpreted this requirement liberally." Yulaeva v. Greenpoint Mortg. Funding, Inc., No. 09-1504, 2009 WL 2990393, at *15, (E.D. Cal. Sept. 9, 2009)(Karlton, J.). For example, in Hutchinson, plaintiffs were able to plead such a loss by claiming that they had suffered negative credit ratings as a result of violations of RESPA, 410 F. Supp. 2d at 383, and in Yulaeva, plaintiffs pled pecuniary loss by alleging that they were "required to pay a referral fee that was prohibited under RESPA." No. 09-1504, 2009 WL 2990393, at *15.

Plaintiffs here only offer the conclusory statement in their FAC that they "have suffered and continue to suffer damages and costs of suit" as a result of Midland and Mortgage Process's alleged failure to comply with RESPA. (FAC ¶ 89.) Even under a liberal pleading standard for harm, this level of generality fails. Plaintiffs will have an opportunity to show that they

11

1   were actually damaged by the alleged failure of notice, however,

2   as this claim is dismissed with leave to amend.

3       E.   Fraud

4           In California, the essential elements of a claim for

5   fraud are "(a) a misrepresentation (false representation,

6   concealment, or nondisclosure); (b) knowledge of falsity (or

7   'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

8   justifiable reliance; and (e) resulting damage." In re Estate of

9   Young, 160 Cal. App. 4th 62, 79 (2008).  Under the heightened

10  pleading requirements for claims of fraud under Federal Rule of

11  Civil Procedure 9(b), "a party must state with particularity the

12  circumstances constituting the fraud." Fed. R. Civ. P. 9(b).

13  The plaintiffs must include the "who, what, when, where, and how"

14  of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1006

15  (9th Cir. 2003) (citation omitted).  "The plaintiff must set

16  forth what is false or misleading about a statement, and why it

17  is false." Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir.

18  1994).  Additionally, "[w]here multiple defendants are asked to

19  respond to allegations of fraud, the complaint must inform each

20  defendant of his alleged participation in the fraud." Ricon v.

21  Reconstrust Co., No. 09cv937, 2009 WL 2407396, at *3 (S.D. Cal.

22  Aug. 4, 2009) (quoting DiVittorio v. Equidyne Extractive Indus.,

23  822 F.2d 1242, 1247 (2d Cir. 1987)).

24          Plaintiffs' fraud allegations do not even come close to

25  surviving a motion to dismiss.  Plaintiffs allege that Midland

26  "misrepresented to Plaintiffs that Midland has the right to

27  collect monies from Plaintiffs . . . when Defendant Midland had

28  no legal right to collect such monies." (FAC ¶ 104.)  Even though

plaintiffs reincorporate their earlier allegations to this cause of action, this conclusory statement does not identify with specificity what representations Midland specifically made, when they were made, who made them, or why they were false.

The FAC also fails to spell out how MERS participated in the fraud, and instead makes a conclusory statement that MERS "misrepresented to Plaintiffs on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust" and that MERS "misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries." (Id. ¶ 105.)  Indeed, as the listed beneficiary as nominee on the Deed of Trust, MERS had the right to assign its beneficial interest to a third party. Supra section II.B.  Second, the conclusory allegations that MERS played a key part in a scheme where loans were pooled, put into trusts, and had securities sold off of them by enabling members to disregard legal requirements for the transfer of an interest in real property are "mere labels and conclusions" that are prohibited by Federal Rule of Civil Procedure 8(a)(2). Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Other courts have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool. See, e.g., Hafiz v. Greenpoint Mortgage Funding, Inc., No. 09-1729, 2009 WL 2137393, at *2 (N.D. Cal. July 16, 2009).  "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but require(s) [p]laintiff to differentiate the allegations when suing more than one defendant . . . and inform each defendant

13

1  separately of the allegations surrounding his alleged

2  participation in the fraud."  Swartz v. KPMG, LLP, 476 F.3d 756,

3  764-765 (9th Cir. 2007)(citation omitted).

4          Plaintiffs also do not state how MERS's alleged

5  misrepresentation of its rights as a beneficiary on the deed

6  harmed them.  Instead plaintiffs make the conclusory statement

7  that "they were harmed and suffered damages."  (FAC ¶ 111.)  At

8  the pleading stage, the complaint "must show a cause and effect

9  relationship between the fraud and damages sought; otherwise no

10 cause of action is stated."  Small v. Fritz Companies, 30 Cal.

11 4th 167, 202 (2003)(citations omitted).  Without such information

12 it is impossible for the court to determine if plaintiffs cannot

13 state a cause of action for fraud because "the damages sustained

14 were otherwise inevitable or due to unrelated causes."  Goehring

15 v. Chapman Univ., 121 Cal. App. 4th 353, 365 (2004).  Without

16 pleading facts to explain this causal connection, plaintiffs'

17 cause of action must fail.  See Iqbal, 129 S. Ct at 1949.

18         Plaintiffs' Opposition further alleges that "the entire

19 scheme of selling and transferring notes and deeds, in which

20 defendant MERS plays a central role, was fraudulent."  (Opp. Mot.

21 to Dismiss at 21.)  Plaintiffs go on to argue, in broad terms,

22 that defendants sold plaintiffs' loan to financial entities who

23 pooled the loans, put them into trusts, and sold securities based

24 on them. Id. at 22; FAC ¶¶ 18-21, 36-37.  As a result, according

25 to plaintiffs, defendants and MERS are no longer entitled to

26 enforce the security interest under the note and the deed of

27 trust. (Opp. Mot. to Dismiss at 22; FAC ¶¶ 34, 36.  While the

28 court cannot consider these additional factual allegations when

1  ruling on a Rule 12(b)(6) motion, <u>Anderson v. Angelone</u>, 86 F.3d
2  932, 934 (9th Cir. 1996), plaintiffs have nevertheless failed to
3  explain how the activity of assigning mortgage loans to a trust
4  pool gives rise to a fraud claim against MERS.  <u>See, e.g.</u>, <u>Hafiz</u>
5  <u>v. Greenpoint Mortgage Funding, Inc.</u>, No. 09-1729, 2009 WL
6  2137393, at *2 (N.D. Cal. July 16, 2009).  The Deed of Trust
7  states that "[t]he Note or a partial interest in the Note
8  (together with this Security Instrument) can be sold one or more
9  times without prior notice to Borrower."  (Def. RJN Ex. A ¶ 20.)
10 Furthermore, MERS is not even attempting to enforce the security
11 interest because on November 10, 2008, MERS assigned its
12 beneficial interest under the Deed of Trust to U.S. Bank.  (Def.
13 RJN Ex. B.)

14     Finally, plaintiffs fail to allege any facts at all
15 that U.S. Bank engaged in fraud, clearly falling short of both
16 the pleading standards set out in <u>Iqbal</u> and Rule 9(b).

17     The Court dismisses Plaintiffs' fraud cause of action
18 as to Midland, MERS, and U.S. Bank with leave to amend.

19     F.   <u>Wrongful Foreclosure</u>

20     Plaintiffs' FAC purports to state a claim for "wrongful
21 foreclosure" against Midland, MERS, and U.S. Bank.  Plaintiffs
22 and defendants disagree about whether plaintiffs are obligated to
23 make full tender to maintain a cause of action for wrongful
24 foreclosure.  As stated above, however, the court will not
25 require plaintiffs to tender.  <u>See</u> <u>supra</u> Section II.A.  The
26 tender argument is irrelevant, however, because plaintiffs have
27 not plead an action in equity to set aside a foreclosure sale,
28 but rather have prayed for exemplary damages (FAC ¶ 146) and a

"temporary restraining order, preliminary and permanent injunction preventing Defendants . . . from collecting on the subject Loan and from causing the Property to be sold, assigned or transferred to a third party." (FAC at 25.)  Plaintiffs' home, however, has already been subject to a Trustee's sale. (Def. RJN Ex. E, F.)  Furthermore, plaintiffs have failed to produce any common law rule or authority providing for a claim for "wrongful foreclosure" at law.  See Fortaleza v. PNC Fin. Servs. Group, Inc., --- F.Supp.2d ---, No. 09-2004, 2009 WL 2246212, at *11 (N.D. Cal. July 27, 2009).  Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale.  See Abdallah v. United Sav. Bank, 43 Cal. App. 4th 1101, 1009 (1996); Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971).  Plaintiffs have also failed to allege that MERS initiated a foreclosure sale, since MERS had already assigned its beneficial interest in the Deed of Trust prior to the foreclosure. (Def. RJN Ex. B.)  Therefore, plaintiffs have failed to state a claim for wrongful foreclosure upon which relief can be granted.

Plaintiffs purport to state a claim for "wrongful foreclosure" based on California Commercial Code section 3301. Plaintiffs allege that Midland, U.S. Bank, and MERS, among other defendants, were not in possession of the Note, are not beneficiaries, assignees or employees of the entity in possession of the note, and are therefore is not "person entitled to enforce" the security interest on the property in accordance with § 3301. (FAC ¶ 136.)  However, section 3301 reflects California's adoption of the Uniform Commercial Code, and does

not govern non-judicial foreclosures, which is governed by California Civil Code section 2924.  See Gaitan v. Mortgage Elec. Registration Sys., No. 09-1009, 2009 WL 3244729, at *10 (C.D. Cal. Oct. 5, 2009).  "The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive."  Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994).  Under California law, there is no requirement for the production of the original note to initiate a non-judicial foreclosure.  Oliver v. Countrywide Home Loans, Inc., No. 09-1381, 2009 WL 3122573, at *3 (E.D. Cal. Sept. 29, 2009) (Damrell, J.) (citing Alvara v. Aurora Loan Servs., No. 09-1512, 2009 WL 1689640, at *6 (N.D. Cal. Jun. 16, 2009)); Kamp v. Aurora Loan Servs., No. 09-00844, 2009 WL 3177636, at *4, (C.D. Cal. Oct. 1, 2009); Putkkuri v. Recontrust Co., No. 08-1919, 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009).  Therefore, plaintiffs cannot assert a claim based on the moving defendants' failure to comply with an inapplicable commercial code when defendants are not required to "produce the note" according to California law of non-judicial foreclosure.

Plaintiffs also base their wrongful foreclosure action on the basis of California Civil Code section 2923.5, arguing that "[d]efendants also failed to properly record and give proper notice of the Notice of Default" on their property.  (FAC ¶ 138.) The FAC simply makes a general allegation as to seven defendants. This general allegation gives the moving defendants insufficient notice of whether they have committed any conduct to violate section 2923.5, and the moving defendants should not be forced to guess whether they are individually liable for this conduct.  See

1  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council</u>

2  <u>of Carpenters</u>, 459 U.S. 519, 526 (1983).

3       Finally, plaintiffs claim that defendants wrongfully

4  foreclosed on plaintiffs' property because they received money

5  from the Troubled Asset Relief Program ("TARP") under the

6  Emergency Economic Stabilization Act ("EESA"), Pub. L. No. 110-

7  343, 122 Stat. 3765 (Oct. 3, 2008), and are therefore subject to

8  the Department of Treasury's guidelines for the Making Homes

9  Affordable Program, H.R. 142 Title I § 109-110, which requires

10  TARP recipients to suspend foreclosures and consider alternative

11  foreclosure prevention options.  However, plaintiffs have not

12  alleged that any defendant has actually received TARP funds,

13  simply pleading that "some or all of the [d]efendants" received

14  such funds.  This is insufficient and forces the moving to guess

15  as to their liability.  <u>See Associated Gen. Contractors of Cal.</u>,

16  459 U.S. at 526.

17       G.   <u>California Business & Professions Code § 17200</u>

18       California's Unfair Competition Law ("UCL"), Cal. Bus.

19  & Prof. Code §§ 17200-17210, prohibits "any unlawful, unfair, or

20  fraudulent business act or practice."  <u>Cal-Tech Communic'ns, Inc.</u>

21  <u>v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).

22  "By proscribing 'any unlawful' business practice, section 17200

23  'borrows' violations of other laws and treats them as unlawful

24  practices that the unfair competition law makes independently

25  actionable."  <u>Id.</u> (citation omitted).  This cause of action is

26  generally derivative of some other illegal conduct or fraud

27  committed by a defendant, and "[a] plaintiff must state with

28  reasonable particularity the facts supporting the statutory

1  elements of the violation."  Khoury v. Maly's of Cal., Inc., 14

2  Cal. App. 4th 612, 619 (1993).

3          Plaintiffs' claims under the UCL are vague and

4  conclusory, simply alleging that "Defendants' acts, as alleged

5  herein, constitute unlawful, unfair, and/or fraudulent business

6  practices . . . ."  (FAC ¶ 116.)  The court has already indicated

7  it will dismiss plaintiffs' other causes of action for violation

8  of the Rosenthal Act, negligence, and fraud against Midland, U.S.

9  Bank, and MERS for failure to state a claim.  Since plaintiffs

10 have failed to state a claim on any of these other grounds, and

11 since those appear to be the sole basis for plaintiffs' UCL

12 claim, they by necessity have failed to state a claim under the

13 UCL.  Accordingly, defendants MERS, U.S. Bank, and Midland's

14 motion to dismiss plaintiffs' UCL cause of action is granted with

15 leave to amend.

16         IT IS THEREFORE ORDERED that defendants Midland, U.S.

17 Bank, and MERS's motion to dismiss plaintiffs' First Amended

18 Complaint as against them be, and the same hereby is, GRANTED.

19         Plaintiffs have twenty days from the date of this Order

20 to file an amended complaint consistent with this Order.

21 DATED:  November 13, 2009

22

23 _____

24 WILLIAM B. SHUBB

   UNITED STATES DISTRICT JUDGE

25

26

27

28